**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENISE PRZYBYLSKI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>DEVA CONCEPTS, LLC,<br><br>Defendant. | CASE NO. 1-20-cv-3630<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiff Denise Przybylski ("Plaintiff" or "Ms. Przybylski") brings this class action against Defendant Deva Concepts, LLC, d/b/a DevaCurl ("Defendant" or "Devacurl"), on behalf of herself and all others similarly situated, and complains and alleges upon her personal knowledge, upon information and belief, and upon the investigation of her attorneys, as follows:

<u>BACKGROUND</u>

1.    Plaintiff brings this class action on behalf of herself and all consumers who purchased Defendant's personal hair products, including:

- DevaCurl No-Poo Original non-lathering conditioning cleanser;

- DevaCurl One Condition Original Daily Cream hair-conditioner;

- DevaCurl Light Defining Gel;

- DevaCurl Low-Poo Original cleanser;

- DevaCurl Low-Poo Delight cleanser;

- DevaCurl No-Poo Decadence cleanser;

- DevaCurl One Condition Delight Weightless Waves hair-conditioner;

- DevaCurl One Condition Decadence Ultra Moisturizing Milk hair-conditioner;

- DevaCurl Leave-In Decadence Ultra Moisturizing conditioner;

- Styling Cream Touchable Curl Definer;

- Wavemaker Touchable Texture Whip;

- DevaCurl Ultra Defining Gel Strong Hold No-Crunch Styler;

- Super Stretch Coconut Curl Elongator; and

- Melt into Moisture Matcha Butter Conditioning Mask (collectively, the "Products").

2.      Plaintiff seeks damages and equitable remedies for herself and a nationwide Class, and a subclass of consumers comprised of Illinois residents, who made the same or similar purchases.

3.      Defendant develops, formulates, manufactures, markets, advertises, distributes and sells the fourteen Products listed above to consumers nationwide, and throughout the state of Illinois.

4.      Since 2002, Defendant has touted itself as a pioneer in a "new haircare category" focused on the needs of women with curly hair.[1] Beginning in 2002, Defendant launched its No-Poo Original, "our game-changing alternative to traditional shampoo. This first-of-its-kind, no-suds conditioning cleanser is free of sulfates, parabens, and silicones to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous. No-Poo changed the industry and the lives of countless curlfriends." *Id*.

---

[1] https://www.devacurl.com/us/curl-101/our-story (last visited April 2, 2020).

5.     According to Defendant's website, DevaCurl was "free of harsh ingredients long before it was buzzworthy, and we did it because it was the right thing to do for curls. All of our products are inspired by our curl community and perfected in our salons, always made with nourishing, hydrating ingredients and designed to meet the unique needs of every curl type." *Id*.

6.     Defendant also claims that its No-Poo Products "allow[] your scalp to regulate, and your hair to become more of what nature intended." *Id*.

7.     Defendant claims that its philosophy is to "listen to your story, your needs, your lifestyle, and develop products that will not only enhance your curls, but also enhance your life."[2] "What's important to you is important to us—which is why we were 100% sulfate, silicone, paraben, phthalate, mineral oil, gluten and cruelty free from our beginning 25 years ago." *Id*.

8.      Regarding the formulation of its Products, Defendant represents that:

> All of our products are formulated with a moisture foundation that helps curls look and feel healthy, conditioned, soft, defined, shiny, and frizz-free. We travel the world and partner with talented chemists researching natural and functional ingredients, technologies, product textures, and innovative ways to give your curls what they need to look and feel their very best every day.
>
> We literally take the products out of the lab and into curls! Our headquarters is one block from our Devachan salon in Soho so there is constant interaction with stylists and clients to test and validate every product for quality, safety and performance.

*Id*.

9.     On its website, Defendant answers the question, "How are new products developed and tested?" by stating: "We are committed to continuously listening, learning and finding innovative ways to help all curlkind love their curls! We listen to our stylists and curl community to find out what they need and also use the latest technology and ingredients to formulate the newest essentials to bring out the best in curls. *Id*.

---

[2] https://www.devacurl.com/us/curl-101/product-philosophy (last visited April 2, 2020).

10.     Regarding the testing, safety, and compliance of its Products, Defendant claims on its website that:

> We test our products on actual people, not mannequins or hair swatches. Devachan Salon is our thinktank and product playground where we put our formulas to the test with our stylists and curlfriends. Each new product is perfected and only introduced to the market after receiving your stamp of approval and undergoing our strict safety testing protocols.
>
> We are committed to the safety of our products and our curl community. Every product undergoes rigorous testing in partnership with our manufacturers and 3rd party testing facilities to ensure everything we produce is safe. Our products contain IFRA compliant fragrances at safe levels (<1%) which align to global safety standards. All of our products meet the safety requirements of the US Cosmetic Ingredient Review (CIR) and Health Canada, and all of our formulas available in the EU comply with the requirements of the EU Scientific Committee on Cosmetics Safety (SCCS).

*Id.*

11.     Defendant has successfully marketed itself and its Products to curly-haired consumers seeking an alternative to traditional shampoos and hair products. This is evident from Defendant's annual revenue, which is estimated to be approximately $100,000,000.00.[3]

12.     Consumers pay a premium above and beyond the cost of traditional retail and salon shampoos for Defendant's Product, based upon the representations above. The current prices on Defendant's website for the Products at issue are as follows:

- DevaCurl No-Poo Original non-lathering conditioning cleanser: $46

- DevaCurl One Condition Original Daily Cream hair-conditioner: $46

- DevaCurl Light Defining Gel: $46

- DevaCurl Low-Poo Original cleanser: $46

---

[3] https://www.owler.com/company/devacurl (last visited April 2, 2020).

- DevaCurl Low-Poo Delight cleanser: $46

- DevaCurl No-Poo Decadence cleanser: $46

- DevaCurl One Condition Delight Weightless Waves hair-conditioner: $46

- DevaCurl One Condition Decadence hair-conditioner: $46

- DevaCurl Leave-In Decadence Ultra Moisturizing conditioner: $26

- Styling Cream Touchable Curl Definer: $28

- Wavemaker Touchable Texture Whip: $26

- DevaCurl Ultra Defining Gel Strong Hold No-Crunch Styler: $46

- Super Stretch Coconut Curl Elongator: $30

- Melt into Moisture Matcha Butter Conditioning Mask: $64

13.    Consumers who have bought and used Defendant's Products have paid not only financially, but physically and emotionally, for their reliance on Defendant's representations and claims.

14.    Notwithstanding Defendant's representations and claims regarding its supposed use of high-quality ingredients in and testing of its Products, there is a defect in Defendant's Products, which has caused a significant number of consumers, including Plaintiff and Class Members, to suffer scalp irritation, hair shedding, hair thinning and breakage, and significant hair loss to the point of balding when using the Products in accordance with the directions provided by Defendant.

15.    Human hair fibers are composed of a central cortex surrounded by a cuticle. Several scientific studies have demonstrated that the curliness of hair fibers is determined by the cross-sectional shape of the hair fiber, and not by the composition of the proteins that make up these two structures (i.e. keratins). Curliness arises from having a more elliptical shape,

whereas straight hair is more circular. Moreover, the types of keratins found in curly hair are the same keratins found in straight hair. Therefore, it is not logical to expect that hair care products would interact with curly or straight hair fibers differently. More specifically, the ingredients in Defendant's Products do not appear to include any compounds that would be expected to interact differently toward curly or straight hair.

16.    The Products' ingredients, which also include their fragrances and extracts, can cause inflammation, which can result in hair loss and increased breakage. This inflammation can also cause the hair follicle to harden, affecting hair texture, and leading to breakage.

17.    Indeed, thousands of consumers have reported scalp irritation, significant hair loss, and/or damage shortly after or during actual use of the Products.

18.    Despite having actual or constructive knowledge of the fact that its Products have injured consumers, Defendant has consistently and uniformly failed to provide any warning to consumers regarding the aforementioned severe side effects that can result – and have resulted – from use of its Products. Instead, Defendant continues to assert online and elsewhere that its Products are purportedly gentle and beneficial to curly-haired consumers. For example, Defendant's website makes statements relating to its No-Poo Product such as "[t]raditional shampoo can be too harsh for curls. That's why we made No-Poo Original! The non-lathering formula with peppermint and grapeseed oil gently cleanses without stripping the natural oils your curls need."[4] With regard to its One Condition® Original product, Defendant's website states "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat

---

[4] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930 (last visited April 2, 2020).

6

as often as needed!"[5] These statements and others were and are false, deceptive, and misleading and have harmed Plaintiff and Class Members.

19.    Disturbingly, Defendant appears to have full knowledge of the detriment its Products pose to consumers and, rather than improve its Products to make them safe for use by consumers, Defendant has opted to conceal and fail to disclose that the Products cause hair loss and shedding, by intentionally blaming other risk factors such as giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more.[6]

20.    Rather than address the problem, Defendant conceals and fails to disclose the defective nature of its Products by actively misleading consumers into believing that the hair loss and shedding caused by the Products is "normal" and "common," that even excessive shedding of over 100 strands of hair per day is "common," and that shedding is not preventable. *Id.*

21.    Defendant unambiguously has knowledge of the hair loss and scalp irritation caused by the Products. For example, Defendant has received multiple FDA complaints of hair loss and scalp irritation since February 2018. And there have been hundreds of complaints posted on social media sites in connection with hair loss caused by Defendant's Products. Major media outlets including the ABC television affiliate in New York City have broken the story.[7] Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with its Products, going so far as to post an explanatory statement on its website, prominently featured with a link entitled "a message for our devas" in the top right corner of the website's homepage.[8]

---

[5] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898 (last visited April 2, 2020).

[6] https://www.devacurl.com/blog/hair-shedding-101/ (last visited April 2, 2020).

[7] https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall-out/5906690/

[8] https://www.devacurl.com/us/deva-community-statement (last visited April 2, 2020).

22.    Despite notice and knowledge of the problems caused by the Products, Defendant has not recalled the Products, has not provided any warnings of the known risks, has denied that the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

23.    Had Plaintiff and Class Members known that Defendant's Products would cause hair loss, scalp irritation and other problems, they would not have purchased the Products.

24.     Plaintiff and each of the Class Members have been damaged and suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein by Defendant and seek compensatory damages and injunctive relief.

25.    Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

## JURISDICTION AND VENUE

26.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from Defendant.

27.    This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States.

28.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant transacts business in this District.

## PARTIES

29.     Plaintiff Denise Przybylski is a resident of Wauconda, Lake County, Illinois, who purchased and used DevaCurl Products within the relevant time period. After using DevaCurl Products, she experienced scalp irritation and scalp flaking.

30.     Defendant Deva Concepts LLC is incorporated in Delaware with its principal place of business at 560 Broadway Suite 206 New York, NY 10012 United States.

## FACTUAL ALLEGATIONS

31.     At all relevant times, Defendant has marketed its Products to curly-haired consumers nationwide, including those residing in the state of Illinois, as being "free of harsh ingredients," a complete replacement for traditional shampoo that creates healthy curly hair without color fading, and as a "game-changing alternative to traditional shampoo."[9]

32.     Notwithstanding Defendant's representations and claims, its Products cause users to sustain scalp irritation, shedding, thinning, breakage, hair loss, and/or balding during normal use and following Defendant's provided directions. Users have hair fall out in varying degrees during and immediately after use. The hair loss, scalp irritation and balding suffered by Plaintiff and Class Members is embarrassing, emotionally devastating, and can be extreme in certain instances.

---

[9] https://www.devacurl.com/us/curl-101/product-philosophy (last visited April 2, 2020).

33.     Consumers pay a premium for the Products far and above what normal hair care products typically cost. For example, Defendant's No-Poo Product sells for forty-six dollars ($46.00) as compared to similar retail products sold at Target for as little as three dollars and ninety-nine cents ($3.99)[10]—a difference of more than forty-two dollars ($42.00).

34.     Consumers pay a premium for Defendant's Products because of the purported benefits Defendant claims they provide above and beyond normal hair care products. For example, Defendant claims that the No-Poo Product is "Sulfate Free," that it is used to "gently cleanse," that it is not "harsh" or made with "harsh ingredients," that it gives "your curls what they need and nothing they don't," and that it comes with benefits such as the ability to keep hair from drying out and maintain composure.

35.     However, the Product labels fail to warn users that the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use:

---

[10]*Compare*:
https://www.sephora.com/product/no-poo-P378324?skuId=1784578&om_mmc=ppc-GG_1918213323_70847768576_pla419288853760_1784578_353573794076_9021734_c&country_switch=us&lang=en&gclsrc=aw.ds&ds_rl=1261471&gclid=EAIaIQobChMItJr6jNG_5wIVRtbACh3WQw2KEAYYBCABEgLOjvD_BwE *with* https://www.target.com/p/suave-professionals-2-in-1-shampoo-and-conditioner-32-fl-oz/-/A-75560945 (last visited April 2, 2020).









36.    Similarly, nowhere on any of the packaging of Defendant's other Products does it state that scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related hair injury occurs from normal use of the Products.

37.    On Defendant's website, Defendant suggests that shedding of hair is "normal":

> If you have curly hair, chances are you've dealt with hair shedding. <u>For most of us, it can be concerning when hair falls out on a daily basis, but it's totally normal.</u> But, what causes hair shedding? How much hair loss it too much? And, how can you prevent it? Today we're here to give you the lowdown on everything you need to know about hair shedding.[11]

---

[11] https://www.devacurl.com/blog/hair-shedding-101/ (last visited April 2, 2020).

38.    Defendant further explains hair loss is more prominent in curly-haired women because "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counter parts." *Id*.

39.    Defendant further attributes shedding to "giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more." *Id*.

40.    Defendant states that "If you're losing more than 100 strands of hair per day, you're dealing with excessive shedding, which is also fairly common." *Id*.

41.    Further, Defendant claims that shedding is not preventable. On its website it states:

**Can I prevent shedding?**

In short, not entirely. While you can lessen the amount of hairs that shed, you'll never be able to completely stop shedding. See your hairstylist or dermatologist if you're really concerned.

*Id*.

42.    Defendant further includes a list of recommendations to lessen shedding. Yet, the cessation of using Defendant's Products is not one of the recommendations to reduce shedding:

**How can I lessen the shedding?**

1.    Find the right <u>cleanser and conditioner</u> for your curl type. This ensures that your curls won't dry out or be damaged which can lead to shedding.
2.    Remove build up. Product build up and dandruff can block your roots and lead to shedding, so be sure to <u>clarify</u> and <u>exfoliate</u>.
3.    Make sure to detangle your hair every time you finish washing your hair. Using a pre-poo (like <u>Wash Day Wonder</u>) before cleansing and finger detangling afterwards can make a world of difference. *Id*.

43.    Above all, far from being the pro-curl products promised by Defendant, the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding. The hair loss is not *de minimis*—consumers, who suffer hair loss often lose significant amounts of hair-and the hair loss persists as long as the user uses the Products.

44.    Many consumers who suffered scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding from the Products saw their symptoms stop by discontinuing their use of the Products.

45.    Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent health risks prior to purchase was injured at the point of sale when, instead of obtaining safe, natural, proven, guaranteed to promote hair growth, strengthening, and conditioning cleanser, consumers obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by the Products.

46.    By marketing, selling and distributing the Products to purchasers throughout the United States, Defendant made actionable statements that the Products were free of defects and safe and fit for their ordinary intended use and purpose.

47.    By marketing, advertising, selling and distributing the Products to purchasers throughout the United States, Defendant made actionable statements that the ordinary use of the Products would not involve undisclosed safety risks. Further, Defendant concealed what they knew or should have known about the safety risks resulting from the material defects in the Products.

48.    Defendant engaged in the above-described conduct, omissions and concealments with knowledge that the representations were false and/or misleading and likely to mislead reasonable consumers. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made. Defendant had and has exclusive access to data pertaining to the Product defects that Plaintiff and Class Members could not and did not have.

49.    Therefore, Plaintiff, on behalf of herself and the Class, hereby brings this action for violations of various state and federal laws.

## DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS ARE MATERIAL TO CONSUMERS

50.    Consumers seek out Defendant's Products specifically for the benefits that Defendant claims they provide to women with curly hair—namely, to promote healthier curly hair than other traditional cleansers and conditioners. Consumers purchase the Products based upon Defendant's representations and claims, including that:

- the Products are "free of harsh ingredients;"

- the Products are "made with nourishing, hydrating ingredients;"

- the Products are "free of sulfates, parabens, and silicones to gently cleanse curls;"

- the Products are sourced from "the highest-quality, good-for-you ingredients from around the world;"

- the Products give "your curls what they need and nothing they don't;"

- "All of our products are … always made with nourishing, hydrating Ingredients;" and

- the Products "helps strengthen hair and reduce breakage."

51.    Consumers also pay a premium for the Products over comparable hair products on the market.

52.    Defendant misleads consumers into thinking they purchased a premium product with greater health benefits and even say that excessive shedding is common, normal and non-preventable; however, users have revealed that in fact the Products cause hair loss, scalp irritation, thinning, breakage, balding during normal use.  Further, consumers have also shown that changing from using the Products eliminates shedding.

15

53.     Risk of hair loss, scalp irritation, thinning, breakage, or balding are material risks to consumers.

54.     Failing to include hair loss, scalp irritation, thinning, breakage, balding, on the labeling, product packaging, and by misleading customers by stating that shedding is "normal," "common," and "non-preventable" are material misrepresentations for consumers of the Products at issue here.

55.     Defendant further misleads consumers into thinking they can and should use unlimited amounts of the Products, through statements such as "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[12]

## PLAINTIFF'S FACTS

56.     Between 2013 and 2019, Plaintiff Denise Przybylski purchased several of Defendant's Products at Amazon.com[13], including:

- No-Poo Original, Zero Lather Cleanser;
- No-Poo Original, One Condition;
- No-Poo, One Condition Delight;
- B'Leave In Conditioner; and
- B'Leave In Curl, Boost and Volumizer.

57.     More specifically, Plaintiff purchased more than $100.00 in DevaCurl Products from Amazon.com, as follows:

    a.   February 2, 2014: DevaCurl One Condition- No-Poo (32 oz.);

---

[12] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898 (last visited April 2, 2020).

[13] Plaintiff also purchased DevaCurl products from Ulta Beauty store, but was unable to locate her receipts.

  b. February 27, 2015: DevaCurl B'Leave In Curl, Boost and Volumizer (6 oz.);

  c. December 16, 2016: DevaCurl B'Leave In Conditioner (6 oz.);

  d. July 11, 2017: DevaCurl No-Poo Original Zero Lather Cleanser (32 oz.);

  e. August 22, 2017: DevaCurl One Condition Delight Conditioner (12 oz.); and

  f. August 29, 2018: DevaCurl One Condition Original, Hair Conditioner.

58. When making her decision to purchase DevaCurl Products, Plaintiff relied on Defendant's representations on the Product labels and packaging, as well as the representations on Defendant's website – particularly that the Products were intended for use on curly hair.

59. Plaintiff used Defendant's above-listed Products daily from 2013 until 2019. During each use of the Products, she followed the directions written and provided by Defendant on the Product labels.

60. Following continuous use of Defendant's products, Plaintiff began to experience scalp irritation. Specifically, her scalp became very itchy and she developed excessive scalp flaking.

61. Plaintiff stopped using the Products in or around early 2019. Since Plaintiff stopped using the DevaCurl Products, her scalp irritation and flaking have completely resolved. She has never experienced irritation and flaking when using any other products in her hair.

62. Plaintiff is similarly situated to the Class she seeks to represent, as she and the putative Class Members purchased Defendant's defective Products, which failed to perform as represented, but instead, caused scalp irritation and hair loss.

63.     Plaintiff and Class Members were, in fact, misled by Defendant's misrepresentations and omissions regarding the Products. But for the misleading and deceptive labeling, packaging, marketing and advertising of the Products. But for Defendant's misleading and deceptive marketing and labeling of the Products, Plaintiff and Class Members would not have purchased the Products, but rather, would have purchased a competitor's products.

## COMMON FACTS

64.     Plaintiff's experience is by no means an isolated or outlying occurrence. Indeed, the Internet is littered with stories from other Class Members complaining of the same issues with the Products as Plaintiff has alleged herein.

65.     As reported by ABC News, stylist and author Stephanie Mero, who goes by the handle 'thecurlninja' on social media, had been a longtime proponent of DevaCurl's Products, using them to maximize her customers' natural curls in her salon and encouraging her thousands of followers online to use them to help bring out their own curls.[14]

66.     According to the report, Ms. Mero says that changed when she started to see damage in her own hair. She eventually stopped using the Products and recommended that her clients do the same.

67.     As further reported, Ms. Mero went on to create a Facebook group for others who believe DevaCurl is behind their hair damage. Currently, there are more than 22,400 members.

68.     According to the report, Ms. Mero says she'll continue speaking out about the issue until DevaCurl issues a recall and the FDA takes the issue more seriously.[15]

---

[14]     https://abc7ny.com/5906690/ (last visited April 2, 2020).
[15]     https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited April 2, 2020).

69.     According to reports, Ms. Mero isn't alone. Another famous Youtuber with more than 200,000 subscribers, posted a <u>video on January 31</u> where she speaks about her own experience with Defendant's Products. *See* Ayesha Malik, "Why I Stopped Using DevaCurl," https://www.youtube.com/watch?v=nuo8UCcyDhg.

70.     According to reports, the YouTuber tells viewers to immediately stop using the Products and apologizes for recommending them: "For the first time in my life I experienced dandruff," Malik said. "My scalp was on fire on some days, I didn't know what it was."[16]

71.     Similarly, a <u>thread</u> on Sephora originally posted in 2016 is now flooded with comments from customers complaining about the products and looking for answers.[17]

72.     Because of the pervasive complaints in respect to the Products, Defendant has knowledge of the alleged defects. Indeed, in January, Defendant issued a public statement acknowledging the alleged defects but refused to take responsibility for the problem and otherwise refused to cure the alleged defects and remedy consumers.[18]

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

> **Nationwide Class:** **All persons in the United States who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

---

[16]     https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited April 2, 2020).

[17]     https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/2411473 (last visited April 2, 2020).

[18]https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited April 2, 2020).

74.    Plaintiff brings this action on behalf of themselves and the members of the following New York Subclass:

**Illinois Subclass: All persons in Illinois who, during the maximum period permitted by the law, purchased the Products from a third-party retailer, including web retailers, for personal, family, or household use and not for resale.**

75.    Specifically excluded from these definitions are (1) any and all persons who purchased the Products directly from Defendant; (2) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (3) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (4) Class Counsel.

76.    As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and the Subclasses, including Plaintiff.

77.    Plaintiff seeks only damages and equitable relief on behalf of themselves and the Class Members. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiff and/or the Class Members.

78.    Numerosity: Although the exact number of Class Members is uncertain at this time and can only be ascertained through discovery, the number is great enough such that joinder is impracticable and likely in excess of 150,000.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

79.    Typicality: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased the Products that were manufactured and distributed by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for

a product that contained a significantly lesser amount of hemp extract than advertised. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in a systematic fraudulent behavior, that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

80.    Commonality: Plaintiff has numerous questions of law and fact common to herself and Class Members that predominate over any individualized questions. These common legal and factual issues include:

a.   Whether the Products are defective such that they cause hair loss, scalp irritation or balding;

b.   Whether and when Defendant had exclusive knowledge that the Products are defective but failed to disclose the defect to the public;

c.   Whether the Products provide the benefits claimed by Defendant on the labeling, packaging, and/or in the course of its marketing;

d.   Whether Defendants' conduct violated the applicable state consumer fraud claims alleged herein;

e.   Whether Defendant's conduct constituted a breach of applicable warranties;

f.   Whether Defendant's acts and omissions make it liable to Plaintiff, the Class, and the Illinois Subclass for negligence and strict products liability;

g.   Whether Defendant engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by objectively misleading Plaintiff and putative Class and Subclass members;

    h.  Whether Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer;

    i.  Whether Defendant's statements, concealments and omissions regarding the Products were material, in that a reasonable consumer could consider them important in purchasing the Products;

    j.  Whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiff and members of the Class and Subclass have suffered an ascertainable loss of monies and/or property and/or value; and

    k.  Whether Plaintiff and Class members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

81.   <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

82.   <u>Predominance and Superiority</u>: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without

remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

83.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

### FIRST CAUSE OF ACTION

### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of The Nationwide Class)

84.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

85.    The Products are consumer products as defined in 15 U.S.C. § 2301(1).

86.    Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3), and are persons entitled under the applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

87.    Plaintiff purchased Products costing more than $5 and her individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

88.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

89.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a cause of action for any consumer, who is damaged by the failure of a warrantor to comply with a written or implied warranty.

90.    Defendant made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiff, Class and Subclass members and Defendant.

91.    Defendant's written affirmations of fact, promises and/or descriptions as alleged––including promises that the Products promote healthy hair, are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," and that they give "your curls what they need and nothing they don't,"[19] — are each a "written warranty." The affirmations of fact, promises, and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

92.    Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[20] The complete satisfaction guarantee constitutes a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

93.    Further, Defendant provided Plaintiff and the other Nationwide Class members with an implied warranty of merchantability in connection with the purchase of the Products that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

---

[19] https://www.devacurl.com/us/curl-101/product-philosophy,
https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary
[20] https://www.devacurl.com/us/faq#shipping

94.     As a part of the implied warranty of merchantability, Defendant warranted to Plaintiff and Class members that the Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

95.     Defendant breached all applicable warranties, as described in more detail above, and is therefore liable to Plaintiff and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Products suffer from latent and/or inherent defects that cause substantial hair loss, hair breakage, and scalp irritation, rendering the Products unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

96.     Any effort to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable, and any such effort to disclaim, or otherwise limit, for the defective Products is null and void. Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant, on the one hand, and Plaintiff and the other Nationwide Class members, on the other. Moreover, any limitations on the warranties are substantively unconscionable. Following early reports of injuries caused by the Products, including multiple complaints to the FDA beginning in February 2018, Defendant knew that the Products were defective and would continue to pose safety risks. Defendant failed to disclose the product defect to Plaintiff and the Nationwide Class members. Thus, Defendants enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

97.     Plaintiff and each of the other Nationwide Class members have had sufficient direct dealings with Defendant to establish privity of contract.

98.     Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its third-party retailers, and specifically of the implied warranties. Third-party retailers such as Ulta Beauty and Amazon were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided with the Products; the warranty agreements were designed for and intended to benefit consumers.

99.     All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiff and others in terms of paying for the goods at issue.

100.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff and the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

101.    Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiff and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiff and the Nationwide Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and the Nationwide Class resort to an informal

dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

102.    Defendant's breaches of warranty have caused Plaintiff and the other Nationwide Class members to suffer injuries, paying for defective Products, and entering into transactions they would not have entered into at all, or not for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and the Nationwide Class have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Products and the cost of efforts to mitigate the damages caused by same.

103.    Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Nationwide Class members are also entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Nationwide Class members in connection with the commencement and prosecution of this action.

**SECOND CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**
**(On Behalf of The Nationwide Class)**

104.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges paragraphs 1-96, as if fully included herein.

105.    Defendant sold and Plaintiff purchased the Products from authorized resellers of Defendant's products.

106.    Defendant represented in its marketing, advertising, and promotion of the Products that the Products promote healthy hair, and are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse

curls," sourced from "the highest-quality, good-for-you ingredients from around the world" and that they give "your curls what they need and nothing they don't."[21]

107.    Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[22]

108.    Defendant made these representations to specifically induce Plaintiff and Class Members to purchase the Products.

109.    Defendant's representations that the Products constituted part of the basis of the bargain between Defendant and Plaintiff (and Class Members).

110.    Each of these representations and the complete satisfaction guarantee constitutes an express written warranty.

111.    Defendant breached its express warranties because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

112.    The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiff and Class members. The defect was undiscoverable by Plaintiff and the Class members at the time of purchase of the Products.

---

[21] https://www.devacurl.com/us/curl-101/product-philosophy
[22] https://www.devacurl.com/us/faq#shipping

113.    While Defendant expressly disavows all warranties or representations, this disavowal is limited by its own plain language to "any products or services ordered or provided via the [Defendant's] website.[23] None of the Products at issue in this case (including those purchased by the Plaintiff) were products "ordered or provided via the [Defendant's] website," and all persons who purchased the Products from Defendants' website are expressly excluded from the putative Class and Subclass.

114.    Plaintiff and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff and the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

115.    Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiff and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiff and the Nationwide Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products.[24] Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

---

[23] https://www.devacurl.com/us/terms-conditions
[24] https://www.devacurl.com/us/deva-community-statement

116.    As a direct and proximate result of Defendant's breaches of these express warranties, Plaintiff and Class Members have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiff also paid a premium for Defendant's Products that did not conform to Defendant's express warranties.

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of The Nationwide Class)

117.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges paragraphs 1-96, as if fully included herein.

118.    UCC § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UCC § 2-314 has been adopted in New York, N.Y. UCC Law §§ 2-314 and 2A-212, and in 35 other states.

119.    As set forth above, Plaintiff has standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendant's actions.

120.    Defendant is a "merchant" within the meaning of UCC § 2-314 because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" haircare products such as the Products at issue.

121.    Defendant sold and Plaintiff purchased the Products from authorized resellers of Defendant's products.

122.    By placing such products into the stream of commerce, and by operation of law N.Y. UCC Law §§ 2-314 and 2A-212, Defendant impliedly warranted to Plaintiff and Class members that the Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace,

or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

123. Defendant breached the implied warranty of merchantability because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

124. The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiff and Class members. The defect was undiscoverable by Plaintiff and the Class members at the time of purchase of the Products.

125. Defendant has misled consumers into believing the Products were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." Defendant took advantage of Plaintiff's and the Classes' trust and confidence in its brand, and deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp irritation.

126. Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiff and the Classes, not distributors who sold the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiff purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels, which

Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Products.

127.   Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Products that they would not have otherwise paid. Plaintiff and the Classes also did not receive the value of the Product they paid for—the Products are worthless or worth far less than Defendant represents due to the latent and/or inherent defect that causes hair loss and scalp irritation.

128.   Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

129.   Accordingly, Plaintiff are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

130.   As a result of the breach of the implied warranty of merchantability, Plaintiff and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT
**(On Behalf of The Nationwide Class, and in the Alternative to Counts 1-3)**

131.   Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges paragraphs 1-96, as if fully included herein.

132.   According to Defendant's website, New York law applies to all claims.[25]

---

[25] https://www.devacurl.com/us/terms-conditions

133.    Plaintiff conferred benefits on Defendant by purchasing the Products at a premium price.

134.    Defendant has knowledge of such benefits.

135.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the Products, because the Defendant will obtain the benefits conferred by Plaintiff and the Class Members without adequately compensating Plaintiff and the Class Members therefore. Defendant failed to adequately compensate the Plaintiff for the benefits conferred by providing the No-Poo Products without those products having the characteristics and benefits promised.

136.    Retention of those moneys under these circumstances is unjust and inequitable because (a) Defendant falsely and misleadingly represented that the Products promoted healthy hair, were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." (b) Plaintiff paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because of the latent and/or inherent defect that causes hair loss and scalp irritation.

137.    This has resulted in injuries to Plaintiff and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the latent and/or inherent defect that causes hair loss and scalp irritation in Defendant's Products.

138.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Class is unjust and inequitable, and because equity and good

conscience requires restitution, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE – FAILURE TO WARN**
**(On Behalf of The Nationwide Class)**

139.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeats and re-alleges all paragraphs 1-96, as if fully included herein.

140.    According to Defendant's website, New York law applies to all claims.[26]

141.    At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Products to Plaintiff and the Class.

142.    At all times material hereto, the use of the Products in a manner that was intended and/or reasonably foreseeable by Defendant involved substantial risk of hair loss and scalp irritation.

143.    At all times the risk of substantial hair loss and scalp irritation was known or knowable by Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

144.    Defendant, as the developer, manufacturer, distributor and/or seller of the Products, had a duty to warn Plaintiff and the Class of all dangers associated with the intended use.

145.    After receiving multiple complaints of hair loss and scalp irritation, including multiple adverse event reports to the FDA, and after dozens (if not hundreds) of online postings

---

[26] *Id.*

reporting hair loss and scalp irritation after using the Products, a duty arose to provide a warning to consumers that use of the Products could result in hair loss or scalp irritation.

146.    Defendant was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and users of the Products, including Plaintiff and the Class, about the risks, potential dangers and defective condition of the Products.

147.    Defendant was negligent and breached its duty of care by negligently blaming other risk factors for hair loss, by telling consumers that hair loss and shedding was "common," "normal," and "not preventable," thereby concealing and failing to warn purchasers and users o f the Products, including Plaintiff and the Class, about the risks, potential dangers and defective condition of the Products.

148.    Defendant knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using the Products as described herein, and knew that Plaintiff and Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing the Class with adequate warnings.

149.    As a direct and proximate result of Defendant's failure to adequately warn consumers that use of the Products could cause injuries such as hair loss, balding and/or scalp irritation, Plaintiff and the Class have suffered damages as set forth herein.

### SIXTH CAUSE OF ACTION
### NEGLIGENCE – FAILURE TO TEST
**(On Behalf of The Nationwide Class)**

150.    Plaintiff brings this count on behalf of herself and the Nationwide Class and repeat and re-allege paragraphs 1-96, as if fully included herein.

151.    According to Defendant's website, New York law applies to all claims.[27]

152.    Defendant did not perform adequate testing on the Products, which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiff and the Class.

153.    Adequate testing would have revealed the serious deficiencies in the Products in that it would have revealed the substantial hair loss and scalp irritation occasioned by use of the Products.

154.    Defendant had, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—the Products before introducing them into the stream of commerce.

155.    Defendant breached these duties by failing to exercise ordinary care in the design and testing of the Products, which it introduced into the stream of commerce, because Defendants knew or should have known the Products could cause substantial hair loss and scalp irritation.

156.    Defendant knew or reasonably should have known that Class members such as Plaintiff would suffer economic damages or injury and/or be at an increased risk of suffering damage and injury, as a result of its failure to exercise ordinary care in the design of the Products by failing to conduct appropriate testing.

157.    By reason of the foregoing, Plaintiff and the Class experienced and/or are at risk of experiencing financial damage and injury.

158.    As a direct and proximate result of Defendants' failure to test the Products designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised,

---

[27] *Id.*

supplied and/or sold by the Defendant, Plaintiff and the Class have suffered damages as described above.

## SEVENTH CAUSE OF ACTION

### THE ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT ("Illinois CFA")
### (815 Ill. Comp. Stat. 505/1, *et seq*. and 720 Ill. Comp. Stat. 295/1A)
### (Plaintiff individually, and on behalf of the Illinois Class)

159.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

160.    Plaintiff brings this cause of action individually and on behalf of the Illinois Class.

161.    Deva Concepts is a "person" as that term is defined in 815 Ill. Comp. Stat. 295/1(c).

162.    Plaintiff and the proposed Class are "consumers" as that term is defined in 815 Ill. Comp. Stat. 505/1(e).

163.    At all times material, Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*, was in full force and effect.

164.    Plaintiff and Class Members may sue as consumers within the meaning of the Illinois CFA because Defendants' business activities involve trade or commerce, are addressed to the market generally, and otherwise implicate consumer protection concerns.

165.    The Illinois CFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of trade or commerce…whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. 505/2.

166.    Ford engaged in deceptive trade practices in violation of the CFA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective transmissions installed in them.  Ford's deceptive business practices include:  (i) representing that its vehicles and transmissions had characteristics, uses, or benefits which they do not have; (ii) advertising its goods with intent not to sell them as advertised; (iii) representing that its vehicles and transmissions are of a particular standard, quality, or grade when they are not; (iv) representing that a transaction conferred or involved rights, remedies, or obligations which they do not; and (v) representing that its goods have been supplied in accordance with a previous representation when they have not.

167.    When Defendant designed, developed, manufactured, marketed, and sold the Products, it was involved in the conduct of trade and commerce under the Illinois CFA.

168.    At the time Defendants developed, manufactured, marketed, and sold the Products, it knew that the Products contained the Defect, which poses serious safety risks to consumers, including Plaintiff and Illinois Class members.

169.    Nevertheless, Defendants concealed their knowledge of the Defect from consumers and instead continued to market and sell the Products as safe hair care. Defendant has misled consumers into believing the Products were sulfate free, that they are used to gently cleanse, that they are not made with harsh ingredients, and that hair loss and shedding (even excessive shedding) is common, normal, and unpreventable. Defendant took advantage of the trust and confidence of Plaintiff and the Class in its brand, and deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp irritation.

170.    Defendants' intentional misrepresentations, omissions, and concealments of material fact constitute unfair and/or deceptive practices in violation of the Illinois CFA.

171.    Defendant violated the Illinois CFA when it sold a product that it knew was defective and held out to the public that the Products were safe to use on their hair, and would not cause damage.

172.    Defendant owed Plaintiff and Class Members a duty to disclose the true nature of the Products because Defendant: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Plaintiff and Class Members that contradicted these representations.

173.    Defendant's failure to disclose and active concealment of the dangers and risks posed by the Products were material to Plaintiff and Class Members.

174.    Defendant's deceptive practices, including, but not limited to, its deceptive and misleading marketing of the Products, were designed to induce Plaintiff and Class members to purchase the Products containing the Defect and to avoid a potential decrease in sales as a result of the Defect.

175.    Plaintiff and Class Members suffered injury-in-fact as a direct result of Defendant's violations of the Illinois CFA in that they have paid for the Products, which are inferior and pose an immediate safety risk.

176.    Plaintiff and Class Members suffered ascertainable loss caused by Defendant's misrepresentations and failure to disclose material information. Had they been aware of the defect, Plaintiff and Class Members either would have paid less for the Products or would not have purchased or leased them at all. Plaintiff and Class Members did not receive the benefit of their bargain as a result of Defendant's misconduct.

177.    Defendant knew or should have known that its conduct violated the CFA.

178.    Defendant's violations present a continuing risk to Plaintiff, the Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

179.    As a direct and proximate result of Defendant's violations of the CFA, Plaintiff and Class Members have suffered injury-in-fact and/or actual damages.

180.    Pursuant to 815 Ill. Comp. Stat. 505/10a(a), Plaintiff and the Class seek monetary relief against Defendant in the amount of actual damages, as well as punitive damages because defendant acted with fraud and/or malice and/or was grossly negligent.

181.    Plaintiff and the Class also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. 505/1 *et seq.*

## EIGHTH CAUSE OF ACTION
**Violation of Illinois's Uniform Deceptive Trade Practices Act ("Illinois UDTPA"), 815 Ill. Comp. Stat. 510/1, *et seq.*
(Plaintiff individually, and on behalf of the Illinois Class)**

182.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

183.    Plaintiff brings this cause of action individually and on behalf of the Illinois Class.

184.    At all times material, Illinois's Uniform Deceptive Trade Practices Act, 815 Ill Comp. Stat. 510/1, *et seq.*, was in full force and effect.

185.    The Illinois UDTPA provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: ". . . (5) represents that goods or services have . . . uses, benefits,

or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 Ill. Comp. Stat. 510/2.

186.    Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

187.    Defendant's actions, as alleged herein, constitute deceptive, unfair, fraudulent, and unlawful practices committed in violation of the Illinois UDTPA.

188.    All of the conduct and misrepresentations alleged herein occurred in the course of Defendant's business and was part of a pattern or generalized course of conduct.

189.    As described more fully above, Defendant knew of the defect and that Products posed a serious safety risk to Plaintiff and Class members.

190.    Despite its knowledge of the serious safety risk the Products posed to consumers, Defendants failed to issue a warning or to recall and/or replace the Products and instead concealed the Defect and the safety issues with the Products from consumers.

191.    Defendants concealed their knowledge of the Defect from consumers and instead continued to market and sell the Products as safe hair care. Defendant has misled consumers into believing the Products were sulfate free, that they are used to gently cleanse, that they are not made with harsh ingredients, and that hair loss and shedding (even excessive shedding) is common, normal, and unpreventable. Defendant took advantage of the trust and confidence of Plaintiff and the Class in its brand, and deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp irritation

192.    As an entity with exclusive knowledge regarding the safety risk and defect associated with the Products, Defendants had a duty to disclose the existence of any defect,

particularly in light of the fact that the Products posed a serious safety risk to Plaintiff and Class Members.

193.    Plaintiff and Class members reasonably expected that Defendants would disclose the existence of the defect and the serious safety risk that the Products posed to consumers and the public, information which is and was material to Plaintiff and Class members. Plaintiff and Class members also reasonably expected that Defendants would not sell a product that was unsafe to use.

194.    Defendant, at all times material, knew or should have known that Plaintiff and Class Members did not know of, nor could reasonably have been expected to discover, the safety risk posed by the Products and that Defendants was in exclusive possession of the knowledge of the defect.

195.    By concealing the safety risk posed by the Products and the existence of the defect, Defendants engaged in actionable conduct within the meaning of the Illinois UDTPA.

196.    Had Plaintiff and Class members known of the safety risk and/or the defect in Products, they would not have purchased the Products, or else would have paid substantially less for them.

197.    Defendant's deceptive, unfair, fraudulent, and unlawful conduct alleged herein was specifically designed to and did induce Plaintiff and Class Members to purchase the Products.

198.    Plaintiff and Class Members suffered injury and/or damage to real or personal property as a result of their purchases and thus Plaintiff has standing to represent the Class in this action.

199.    As a direct and proximate result of Defendants' violation of the Illinois UDTPA alleged herein, Plaintiff and Class members were damaged.

200.    Plaintiff and Illinois Class members seek injunctive relief, pursuant to 815 Ill. Comp. Stat. 510/3, against Defendants based upon the extremely high likelihood that Plaintiff and Class members may personally suffer future damages from the defect in the Products.

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Classes and Plaintiff's attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pled or as the Court may deem proper; and

h. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 8, 2020                    Respectfully submitted,


                                      s/Alex R. Straus
                                      Alex R. Straus (NY Bar No. 517419)
                                      GREG COLEMAN LAW PC

16748 McCormick Street
Los Angeles, CA 91436
T: 310-459-9689
alex@gregcolemanlaw.com

Rachel Soffin*
Jonathan B. Cohen*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T:  865-247-0080
F:  865-522-0049
rachel@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

Daniel K. Bryson*
Carolina R. Taylor*
Harper Todd Segui*
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
T:  919-600-5000
F:  919-600-5035
dan@whitfieldbryson.com
caroline@whitfieldbryson.com
harper@whitfieldbryson.com

*Applications *pro hac vice* to be submitted

*Attorneys for Plaintiff and the Class*